UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY AGUILAR, | ) | Case No. 3:09CV1498 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE DAN AARON POLSTER |
| | ) | (Magistrate Judge McHargh) |
| ROBERT WELCH, | ) | |
| Warden, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner, Anthony Aguilar ("Aguilar"), has filed a petition for a writ of habeas corpus, arising out of his 2003 convictions for breaking and entering, vandalism, and grand theft, in the Defiance County (Ohio) Court of Common Pleas. In his petition, Aguilar raises two grounds for relief:

> 1. The severance remedy that the Ohio Supreme Court set forth in State v. Foster, 109 Ohio St.3d 1 (2006), violates the Ex Post Facto Doctrine and Due Process Clause of the United States Constitution.

> 2. Mr. Aguilar was deprived of his Sixth Amendment right to effective assistance of counsel at his revocation hearing, when his attorney failed to object to imposition of a sentence imposed under unconstitutional sentencing statutes.

(Doc. 1, § 12.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

> On February 17, 2003, the Defiance County grand jury indicted Aguilar on six (6) counts of breaking and entering in violation of R.C. 2911.13(A), and fifth degree felonies; four (4) counts of vandalism in violation of R.C. 2909.05(B)(1)(b), and fifth degree felonies; two (2) counts of grand theft of firearms in violation of R.C. 2913.02(A)(1), and fourth degree felonies; two (2) counts of theft in violation of R.C. 2912.02(B)(2), and fifth degree felonies; one (1) count of attempted breaking and entering in violation of R.C. 2923.02, and a first degree misdemeanor; and two (2) counts of theft in violation of R.C 2913.02(A)(1), and first degree misdemeanors.
>
> On July 9, 2003, Aguilar pled guilty to six (6) counts of breaking and entering, fifth degree felonies; four (4) counts of vandalism, fifth degree felonies; and one (1) count of grand theft of a firearm, a fourth degree felony as part of a negotiated plea agreement. The remaining counts were subsequently dismissed.
>
> On August 27, 2003, the trial court held a hearing and sentenced Aguilar to five years of community control and ordered him to pay $30,491.39 in restitution. The trial court reserved the right to impose a ten month term of imprisonment as to each of the eleven pled counts to be served consecutively for a total sentence of one hundred ten (110) months. The trial court filed its judgment entry of sentence on August 28, 2003.
>
> On March 20, 2007, the State filed a motion to revoke Aguilar's community control alleging that he had caused physical harm to his wife and child. On March 21, 2007, Aguilar appeared with court-appointed counsel, waived his right to a probable cause hearing, and requested that the matter be continued for an adjudicatory hearing.
>
> On April 9, 2007, Aguilar admitted that he violated the terms and conditions of his community control. The trial court immediately proceeded to disposition, hearing statements from both the State and defense counsel on Aguilar's behalf. On April 12, 2007, the trial court issued its judgment revoking Aguilar's community control and imposed

a one hundred ten (110) month term of imprisonment, less fifty six (56) days credit for time served.

(Doc. 7, RX 15, at 2-3; State v. Aguilar, No. 4-07-15, 2007 WL 3342797, at *1 (Ohio Ct. App. Nov. 13, 2007).)

Aguilar filed a timely appeal of his conviction, and set forth the following two assignments of error:

> 1.  The trial court erred when it sentenced Appellant to serve nonminimum, consecutive prison terms. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Section 16, Article I, Ohio Constitution. (August 28, 2003 and April 12, 2007 Judgment Entries; Sentencing Tr. 10, Revocation Tr. 12).
>
> 2.  Appellant did not receive effective assistance of counsel at his revocation hearing, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

(Doc. 7, RX 12.)  On Nov. 13, 2007, the court of appeals affirmed the judgment of the trial court.  (Doc. 7, RX 15; State v. Aguilar, No. 4-07-15, 2007 WL 3342797 (Ohio Ct. App. Nov. 13, 2007).)

Aguilar filed a timely appeal to the Supreme Court of Ohio, which set forth the following two propositions of law:

> 1.  The remedy that this Court set forth in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856 violates the Ex Post Facto and Due Process Clauses of the United States Constitution as well as Article I, Section 16 of the Ohio Constitution.
>
> 2.  A defendant is deprived [of] the effective assistance of trial counsel when counsel fails to object to an unconstitutional sentence Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

3

(Doc. 7, RX 17.)  On Apr. 9, 2008, the state supreme court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question.  (Doc. 7, RX 18; State v. Aguilar, 117 Ohio St.3d 1460, 884 N.E.2d 68 (2008).)

Aguilar filed this petition for a writ of habeas corpus on July 1, 2009.  (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III.  FOSTER

The first ground of the petition is that Aguilar's sentence is unconstitutional because the severance remedy that the Ohio Supreme Court set forth in State v. Foster violates the Ex Post Facto Doctrine and Due Process Clause of the United States Constitution.

The Ohio court of appeals rejected Aguilar's arguments as follows:

> Aguilar argues that Foster's severance remedy operated as an ex post facto law and violated his due process rights.  State v. Foster, 109 Ohio St.3d 1, 2006-Ohio856, 845 N.E.2d 470.  The State argues that our decision in State v. McGhee [No. 17-06-05, 2006 WL 2796275 (Ohio Ct. App. Oct. 2, 2006)] is controlling; and therefore, Aguilar's due process rights were not violated, and the application of Foster did not create an ex post facto law.  Aguilar acknowledges that our ruling in McGhee is applicable but asks us to overrule it.  We agree with the State and decline to overrule McGhee.

5

> This court has previously held that the Ohio Supreme Court's decision in Foster does not violate the due process clause or the ex post facto clause. The Ohio Supreme Court has twice denied review of our decision in McGhee. Furthermore, every Ohio Appellate District has either followed McGhee or similarly ruled that Foster did not violate the ex post facto clause or a defendant's due process rights. Therefore, for the reasons we stated in McGhee, we find that Aguilar's ex post facto and due process arguments lack merit.
>
> Furthermore, Aguilar committed the offenses at issue after the United States Supreme Court decided Apprendi v. New Jersey, [530 U.S. 466 (2000)], which foreshadowed a major change in criminal sentencing law. And, the statutory range of sentences for the offenses of which Aguilar was convicted has remained unchanged; thus, Aguilar was on notice of the potential penalties for his unlawful conduct. McGhee [2006 WL 2796275, at ¶¶ 16, 20]; R.C. 2929.14(A)(4), (5).
>
> Aguilar also argues that he should have been sentenced to a minimum concurrent sentence rather than consecutive terms, because "consecutive sentences are no longer authorized by Ohio law." (Appellant's Brief at 13). Aguilar's argument lacks merit. This Court has previously held that trial courts have authority to impose consecutive sentences following Foster. State v. Miller [No. 2-07-02, 2007 WL 2694387, at *2 (Ohio Ct. App. Sept. 17, 2007)].)

(Doc. 7, RX 15, at 4-5; Aguilar, 2007 WL 3342797, at *2 (several citations omitted).)

> Aguilar argues that:
>
> During the time that the offenses occurred in the instant case, factual findings mandated by the Ohio Revised Code were required to be made before non-minimum, maximum, and/or consecutive sentences could be imposed. Subsequent to Foster, those findings were stripped from Ohio's sentencing proceedings, and Mr. Aguilar was sentenced without the procedural protections that were associated with those findings.

(Doc. 1, § 12(a).) Aguilar claims that the state court's ruling violated constitutional law as set forth in Miller v. Florida, 482 U.S. 423 (1987), and Bouie v. City of Columbia, 378 U.S. 347 (1963). (Doc. 8, at 4.)

6

Aguilar contends that the Ohio Supreme Court's decision in Foster violates the ex post facto doctrine and the Due Process Clause. Id. at 4-8. The severance remedy in Foster "operates retrospectively and disadvantages him," as an ex post facto violation. Id. at 5. There is a due process violation because, according to Ohio's sentencing statutes in 2002 and 2003, "there was a presumption the Mr. Aguilar would be given minimum, concurrent sentences, unless a judge made the findings required by statute." Id. at 6. Aguilar also argues that "the statutory deletions in Foster eliminated the ability of an appellate court to effectively review a sentence." Id. at 9.

The state court of appeals relied on a previous decision, State v. McGhee, in supporting its denial of Aguilar's due process and ex post facto arguments. (Doc. 7, RX 15, at 4-5; Aguilar, 2007 WL 3342797, at *2.)

In McGhee, the defendant's original sentence had been vacated by the state court of appeals, based on Foster, and remanded for resentencing. State v. McGhee, No. 17-06-05, 2006 WL 2796275, at *1 (Ohio Ct. App. Oct. 2, 2006). The defendant-appellant subsequently challenged his sentence on remand, asserting the following assignment of error: "The sentence imposed on remand was imposed pursuant to a judicially-created version of Ohio sentencing laws that, applied retroactively to Mr. McGhee, violated his right to freedom from ex post facto laws." Id.

7

Addressing McGhee's federal claim, the court found that federal circuit courts had employed three arguments "in finding that Booker[1] does not violate the ex post facto clause because there has been no due process violation." McGhee, 2006 WL 2796275, at *5. First, defendants were on notice as to the statutory maximum, regardless of whether the guidelines were mandatory, and the court found this to be true as to the Ohio criminal statutes as well. Second, the defendant had notice after Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), that state sentencing statutes were likely to be subject to judicial scrutiny. Id. at *5-*6. And finally, for those reasons, and "because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in Foster violates federal notions of due process." Id. at *7.

## A. Ex Post Facto

This court has addressed these same arguments on more than one occasion. See, e.g., Allen v. Hudson, No. 1:08CV1825, 2009 WL 5178315, at *5-*6 (N.D. Ohio Dec. 29, 2009); Torres v. Beightler, No. 1:09CV191, 2009 WL 2705880, at *4 (N.D. Ohio Aug. 27, 2009); Schaub v. Brunsman, No. 1:08CV2522, 2009 WL 2143746, at *5 (N.D. Ohio July 16, 2009) (citing cases). See generally State v. Elmore, 122 Ohio St.3d 472, 912 N.E.2d 582 (2009), cert. denied, 130 S.Ct. 1025 (2009) (finding

---

[1] United States v. Booker, 543 U.S. 220 (2005), found federal sentencing guidelines to be unconstitutional because judges made findings of fact to determine sentences.

resentencing pursuant to Foster does not violate Sixth Amendment right to jury trial, or Ex Post Facto or Due Process Clauses of U.S. Constitution).

An ex post facto law "changes the punishment or inflicts a greater punishment than the law annexed to the crime when it was committed." Black's Law Dictionary (6th ed. 1990) 580. The United States Constitution prohibits a state from passing any ex post facto law. U.S. Const. art. I, § 10, cl. 1. To fall within the prohibition of the Ex Post Facto Clause, a law must 1) apply to events occurring before its enactment, and 2) disadvantage the offender. Weaver v. Graham, 450 U.S. 24, 29 (1981). The change in the law must alter the definition of criminal conduct or increase the penalty by which a crime is punishable. California Dep't of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995). The critical question is "whether the law changes the legal consequences of acts completed before its effective date." United States v. Reese, 71 F.3d 582, 591 (6th Cir. 1995), cert. denied, 518 U.S. 1007 (1996) (quoting Weaver, 450 U.S. at 31).

Ohio courts have uniformly rejected ex post facto challenges to the Foster decision. See, e.g., Elmore, 122 Ohio St.3d at 476-477, 912 N.E.2d at 587-588; State v. Sharp, No. 89295, 2007 WL 4200755, at *2 (Ohio Ct. App. Nov. 29, 2007); State v. Green, No. 2005-A-0069, 2006 WL 3703204, at *3-*4 (Ohio Ct. App. Dec. 15, 2006); McGhee, 2006 WL 2796275, at *7. See generally United States v. Barton, 455 F.3d 649, 657 (6th Cir.), cert. denied, 549 U.S. 1087 (2006) (Booker does not violate ex post facto).

The Ohio Supreme Court in Elmore held that resentencing pursuant to Foster does not violate the Ex Post Facto or Due Process Clauses of the U.S. Constitution. Elmore, 122 Ohio St.3d at 473, 912 N.E.2d at 584 (syllabus). As to the ex post facto argument, the court found that Elmore's challenge failed because he faced no greater penalty on resentencing than he had at his original sentencing, thus there had been no increase in the potential punishment he faced. Id. at 475, 477, 912 N.E.2d at 586, 588. The court distinguished Miller v. Florida, 482 U.S. 423 (1987), because in that case the Florida legislature had increased the presumptive prison range. Id. at 477, 912 N.E.2d at 588. See also Woody v. Welch, No. 3:08CV2534, 2009 WL 1440828, at *8-*9 (N.D. Ohio May 20, 2009) (noting that Miller involved retroactive application of legislative enactment). In the case before it, the court noted that the statutory penalties for the crimes in Elmore remained the same both before and after Foster. Such is the case here as well.

At the time that Aguilar changed his pleas to guilty, he was advised that he was subject the possible penalty of six to eighteen months imprisonment on the Grand Theft charge, and to the possible penalty of six to twelve months imprisonment on the other charges, either concurrently or consecutively. (Doc. 7, RX 5, at 1-2.) In addition, when Aguilar was sentenced to community control, he acknowledged that a violation of the conditions of community control could result in a sentence of 110 months, namely ten months for each of eleven counts. (Doc. 7, RX 6, at 3; see also RX 7.) Upon resentencing, he received the same sentence of 110

10

months.  (Doc. 7, RX 10.)  This sentence was within the statutory range, and less than the maximum of which he had been advised, when entering his plea.

The appellate court in McGhee found no ex post facto violation because the defendant "knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because [he] was unlikely to amend his criminal behavior in light of a sentencing change."  McGhee, 2006 WL 2796275, at *7.  In Sharp, the court noted that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and Foster "did not judicially increase the range of his sentence."  Sharp, 2007 WL 4200755, at *2.

The court finds these decisions persuasive.  As pointed out by this court in Torres, "Foster did not criminalize any conduct which had not been criminal prior to the decision.  Nor did Foster increase the maximum penalty that could be handed down for a crime."  Torres, 2009 WL 2705880, at *8.  See also Adams v. Kelly, No. 4:09CV137, 2009 WL 5061766, at *6 (N.D. Ohio Dec. 15, 2009) (finding Elmore persuasive).

In any event, the court finds that Aguilar has failed to demonstrate that the state court decisions concerning his ex post facto claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

B. Due Process

The Ohio Supreme Court in Elmore held that resentencing pursuant to Foster does not violate the Due Process Clause of the U.S. Constitution. Elmore, 122 Ohio St.3d at 473, 912 N.E.2d at 584 (syllabus). As to the due process argument, the court found that the application of the Foster remedy to the defendant's resentencing did not violate due process because:

> Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to his earlier committed offenses, nor did it create the possibility of consecutive sentences where none had previously existed. Thus, Elmore had notice of the sentencing range, which was the same at the time he committed the offenses as when he was resentenced. He never had an irrebuttable presumption of minimum and concurrent sentences.

Elmore, 122 Ohio St.3d at 478, 912 N.E.2d at 588. The court also noted that federal circuit courts had rejected similar due process criticisms of Booker, because "defendants were on notice as to the statutory maximums regardless of whether federal sentencing guidelines were mandatory." Id. at 479, 912 N.E.2d at 589 (citing cases).

Bouie v. City of Columbia, 378 U.S. 347 (1963), arose out of a "sit-in" demonstration at a segregated lunch counter[2] at Eckerd's Drug Store in Columbia, South Carolina. Bouie, 378 U.S. at 348. The Court set out the following factual background:

> On March 14, 1960, the petitioners, two Negro college students, took seats in a booth in the restaurant department at Eckerd's and waited

---

[2] The rest of the store was not segregated.

12

> to be served. No one spoke to them or approached them to take their orders for food. After they were seated, an employee of the store put up a chain with a 'no trespassing' sign attached. Petitioners continued to sit quietly in the booth. The store manager then called the city police department and asked the police to come and remove petitioners. After the police arrived at the store the manager twice asked petitioners to leave. They did not do so. The Assistant Chief of Police then asked them to leave.

Id. They were arrested, and subsequently acquitted of breach of the peace, but convicted of criminal trespass, which conviction was upheld on appeal.

The South Carolina statute had defined the prohibited conduct as "entry upon the lands of another * * * after notice from the owner or tenant prohibiting such entry." Id. at 349. The Supreme Court continued:

> The South Carolina Supreme Court, in affirming petitioners' convictions, construed the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of remaining on the premises of another after receiving notice to leave. * * * Petitioners contend, however, that by applying such a construction of the statute to affirm their convictions in this case, the State has punished them for conduct that was not criminal at the time they committed it, and hence has violated the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits. We agree with this contention.

Id. at 350.

The Court noted that the "basic principle" at issue in Bouie was that "a criminal statute must give fair warning of the conduct that it makes a crime." Id. at 350. The Court found that the South Carolina statute, which was precise on its face had been "unforeseeably and retroactively expanded by judicial construction." Id. at 352. The Court explained:

> By its terms, the statute prohibited only 'entry upon the lands of another * * * after notice from the owner * * * prohibiting such entry * * *.' There was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave.

Id. at 355.

The Court concluded:

> The crime for which these petitioners stand convicted was 'not enumerated in the statute' at the time of their conduct. It follows that they have been deprived of liberty and property without due process of law in contravention of the Fourteenth Amendment.

Id. at 363.

The elements of the crimes for which Aguilar entered guilty pleas, such as Grand Theft and Breaking and Entering, were not modified in any way by any judicial action of the state courts. Aguilar cannot argue that the statute did not give him fair warning of the conduct that it makes Grand Theft a crime. See, e.g., Adams , 2009 WL 5061766, at *6 (despite Foster, Ohio criminal statutes gave fair notice that acts defendant engaged in were prohibited, and degree of punishment which could be imposed). The reliance on Bouie v. City of Columbia is thus misplaced, and the court finds no due process violation of federal law as expressed in Bouie. See generally Torres, 2009 WL 2705880, at *8 (Foster did not increase penalty; Ohio's criminal statutes gave defendant fair warning of what was prohibited and of potential penalties); Lyles v. Jeffreys, No. 3:07CV1315, 2008 WL 1886077, at *12 (N.D. Ohio Apr. 24, 2008) (federal courts have universally rejected arguments that sentencing statutes reshaped by Booker violate due process).

14

Aguilar also argues that there is a constitutional violation because one result of Foster is that "the statutory deletions in Foster eliminated the ability of an appellate court to effectively review a sentence." (Doc. 8, at 9.) Cursory research reveals that Ohio felony sentences are still receiving appellate review after Foster, although the state courts have not yet unanimously resolved the applicable standard of review. See, e.g., Adams, 2009 WL 5061766, at *10; State v. Kalish, 120 Ohio St.3d 23, 28, 896 N.E.2d 124, 130 (2008) (2-step approach); State v. Harris, No. 90699, 2008 WL 4885049, at *13 (Ohio Ct. App. Nov. 13, 2008). Aguilar has not identified any clearly established federal law that would indicate that Ohio's sentencing appeal procedures are unconstitutional.

The court finds that Aguilar has failed to demonstrate that the state court decisions concerning his due process claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## IV. INEFFECTIVE ASSISTANCE

The second ground of the petition, which had been based on ineffective assistance of counsel, has been withdrawn by the petitioner. (Doc. 8, at 10.)

## V. SUMMARY

The petition for a writ of habeas corpus should be denied. Aguilar has failed to demonstrate that the state court decisions concerning his due process and ex post

facto claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.

Dated:   Aug. 18, 2010               /s/ Kenneth S. McHargh
                                     Kenneth S. McHargh
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).